

ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 20 2012

CLERK, U.S. DISTRICT COURT
By_____
         Deputy

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | CASE NO.: 4:12-MJ-245 |
| BALDEMAR SOLIS (01) | § | |
| a/k/a "Balt" | § | |
| AMANDA CAVAZOS (02) | § | |
| HOSIE TUCKER III (03) | § | |
| DAVID ALONZO (04) | § | |

## CRIMINAL COMPLAINT

I, the undersigned Complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

Beginning on or about June 11, 2012, in the Fort Worth Division of the Northern District of Texas, and elsewhere, defendants **Baldemar Solis, also known as "Balt," Amanda Cavazos, Hosie Tucker III, David Alonzo** and others known and unknown to the complainant did knowingly and intentionally conspire with each other and others known and unknown to the complainant to possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846 (21 U.S.C. § 841(a)(1) and (b)(1)(B)).

I further state that I am a Task Force Officer with the Drug Enforcement Administration and that this affidavit is based on my experience and my personal knowledge of the below described case, as well as interviews with and information received from Special Agents and other Task Force Officers assigned to the Fort Worth Resident Office and Officers with other Agencies.

1. On June 12, 2012, TFO Crum and TFO Perry met with Jeffrey Gillispie. Gillispie stated he was a methamphetamine source of supply for Enrique Jose Rodriguez, also known as "Joey." Gillispie stated that he had delivered one (1) ounce of methamphetamine to Rodriguez on June 10, 2012.

Gillispie stated that he had delivered the methamphetamine to Rodriguez on a "front," meaning that Rodriguez would pay for the methamphetamine at a later date. Gillispie stated that his source of supply for the methamphetamine was David Alonzo. Gillispie identified David Alonzo by his Texas driver license photograph. Gillispie stated that he had been receiving methamphetamine from David Alonzo on at least a weekly basis for approximately the past seven (7) months in quantities ranging from multi-ounces to a kilogram at a time.

2. Gillispie stated that sometime after the delivery was made, Rodriguez contacted him and stated that the methamphetamine was of poor quality and that only seven (7) grams of the methamphetamine were distributable. At the direction of investigators, Gillispie contacted Rodriguez by telephone and arranged for Rodriguez to return the remaining methamphetamine and money received from the sold methamphetamine to TFO Dominguez acting in an undercover capacity. Gillispie provided Rodriguez a telephone number for TFO Dominguez and instructed him to call TFO Dominguez to arrange the meeting. Rodriguez agreed and stated that he would be returning approximately fourteen (14) grams of methamphetamine and approximately $200.00.

3. Shortly after the phone call ended, TFO Dominguez received a telephone call from Rodriguez who stated he had been instructed to contact TFO Dominguez to arrange the return of the methamphetamine. TFO Dominguez stated he would call him back to make the arrangements. Over the next several hours, several phone calls and multiple text messages were exchanged between TFO Dominguez and Rodriguez. TFO Dominguez and Rodriguez eventually agreed to meet at the Fry's Electronics at Matlock and Interstate 20 in Arlington, Texas to make the exchange. Minutes prior to the expected arrival of Rodriguez at the Fry's Electronics, Rodriguez contacted TFO Dominguez and stated that he was sending two females in a black Nissan passenger vehicle to meet with TFO Dominguez and return the methamphetamine and money.

A short time later, at approximately 1657hrs, two females in a black passenger vehicle arrived at the Fry's Electronics and parked next to TFO Dominguez. The driver of the vehicle, later identified as Larae Lynn Dorman, exited her vehicle and spoke to TFO Dominguez. Dorman then handed TFO Dominguez approximately fourteen (14) grams of methamphetamine and 200.00. Dorman and the other female then left the parking lot in the black passenger vehicle. Agents followed the vehicle and ultimately had the vehicle stopped by the Arlington Police Department where Dorman and the passenger were detained and identified.

4. TFO Moore read Dorman her rights which she waived before speaking to TFO Crum and TFO Moore. Dorman stated that Rodriguez was her methamphetamine source of supply and admitted to delivering the fourteen (14) grams of methamphetamine and $200.00 to TFO Dominguez at the direction of Rodriguez. Dorman stated that she received the methamphetamine and money from Rodriguez at his residence located at 819 Edgemont Drive, Arlington, Texas just prior to meeting with TFO Dominguez. Dorman admitted to being a methamphetamine distributor with multiple customers. Dorman stated that she was currently out on bond for a state methamphetamine charge and had been to prison in the past for distributing methamphetamine.

5. At approximately 1840hrs, members of the Fort Worth R.O. arrested Rodriguez and detained Hosie Tucker III in front the residence located at 819 Edgemont Drive, Arlington. Rodriguez allowed TFO Crum to search his house and was read his rights by TFO Mott. During the search of 819 Edgemont, investigators located and seized a small amount of methamphetamine, two firearms, and methamphetamine distribution paraphernalia. Rodriguez confirmed that Gillispie was one of his methamphetamine sources of supply and that he had given Dorman the fourteen (14) grams of methamphetamine and $200.00 which he then directed her to deliver to TFO Dominguez.

Rodriguez confirmed that he was a multi-ounce methamphetamine distributor and that Dorman was one of his regular methamphetamine customers who was also a methamphetamine distributor with customers of her own. Rodriguez stated that he was about to meet with another one of his methamphetamine sources of supply, Wallace James Stevenson, before he was arrested. Rodriguez stated that he had arranged to purchase one (1) ounce of methamphetamine from Stevenson at Stevenson's house located at 911 Hemes Ln, Arlington, Texas. Rodriguez stated that Tucker was a 1/4 ounce methamphetamine customer of his. Rodriguez stated that Hosie Tucker III was at the residence for the purpose of obtaining methamphetamine. Rodriguez stated that Hosie Tucker III had come to the residence to pick him up and take him to Stevenson's house for the purpose of obtaining methamphetamine. These statements were corroborated by text messages located on the cellular telephones belonging to both Rodriguez and Tucker. Tucker was released from the scene.

6. Investigators visited Stevenson's house and obtained his permission to search the property. During the search of the residence and with the cooperation of Stevenson, investigators located and seized approximately sixteen (16) ounces of methamphetamine, two firearms, an undetermined amount of U.S. currency and a methamphetamine drug ledger. Investigatros also discovered drug distribution paraphernalia, including scales, in open sight. Stevenson and his common law wife Amanda Cavazos, were then detained. Stevenson was read his rights before he spoke with TFO Mott and FBI S/A Wilson. Stevenson admitted to being a multi-ounce methamphetamine distributor with multiple customers. Stevenson confirmed that he was a methamphetamine source of supply for Rodriguez. Stevenson admitted to possessing the methamphetamine located at his residence. Stevenson identified his source of supply for the methamphetamine as Baldemar Solis a/k/a "Balt," a relative of Amanda Cavazos. Stevenson identified Baldemar Solis by his Texas driver license photograph and agreed to place a monitored telephone call to him.

During this phone conversation Baldemar Solis warns Stevenson of the Police presence at the residence of Rodriguez and the presence of Police surveillance at the residence of Stevenson. Baldemar Solis then instructed Stevenson to remove the methamphetamine from the residence and take it to another location.

7. During the search of the Stevenson residence, Hosie Tucker III arrived and approached a plain clothes Officer believing that he was an occupant or visitor to the residence. Hosie Tucker asked the Officer to tell Stevenson that he was there. TFO Crum and TFO Kotara then detained Tucker. Stevenson stated that he had delivered methamphetamine to Tucker on at least one occasion in the past, but that Tucker was primarily a methamphetamine customer of Rodriguez.

8. Based upon the above listed facts, your Affiant, Cyrus Crum, a Task Force Officer with the Drug Enforcement Administration, believes that probable cause exists that each of the defendants, **Baldemar Solis, also known as Balt, Amanda Cavazos, Hosie Tucker, III, and David Alonzo** did intentionally and knowingly conspire with each other and others known and unknown to the complainant to possess with intent to distribute over fifty grams of a mixture and substance containing methamphetamine.

_06-20-12_
Date

Cyrus Crum
Task Force Officer
Drug Enforcement Administration

Sworn to before me and subscribed in my presence, 20th day of June 2012 at 1:57 a.m./p.m. at Fort Worth, Texas.

Jeffrey L. Cureton
United States Magistrate Judge

**Criminal Complaint – Page 5**