**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | 4:16-CR-00242-A |
| BALDEMAR SOLIS, a.k.a."Balt" | § § § | |

### DEFENDANT BALDEMAR SOLIS'S REQUEST FOR A DOWNWARD VARIANCE, AND SENTENCING MEMORANDUM IN SUPPORT THEREOF

TO THE HONORABLE JOHN McBRYDE, UNITED STATES DISTRICT JUDGE:

Baldemar Solis, a.k.a. "Balt," Defendant, by and through his attorney of record, Terri Moore, requests a downward variance from the advisory sentencing guidelines range calculated in his case based on 18 U.S.C. § 3553(a). In support thereof, Solis offers the following:

I.

Solis was convicted, after a jury trial, of conspiring to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846. Statutorily, he faces a minimum sentence of ten years and a maximum sentence of life. *See* 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). The maximum fine is $8,000,000. *Id.* Based on a Total Offense Level of 43 and a Criminal History Category of IV, the Advisory Guideline Imprisonment Range is Life. (PSR, ¶ 95.)

The defense has filed timely objections to the presentence report (PSR).

II.

Post-*Booker*, district courts have considerable discretion when determining the proper sentence for a criminal defendant. *See Gall v. United States*, 552 U.S. 38, 46 (2007); *see also United States v. Booker*, 543 U.S. 220 (2004). Sentencing judges are now free to vary from a guideline sentence based solely on policy considerations, including disagreements with the guidelines. *See Kimbrough v. United States*, 552 U.S. 85, 101-102 (2007); and *Rita v. United States*, 551 U.S. 338, 351 (2007). A district court need not find "extraordinary" circumstances

before they impose sentences outside of the guidelines range. *United States v. Williams*, 517 F.3d 801, 811 (5th Cir. 2008). 18 U.S.C. § 3553(a) lists seven factors that a sentencing court must consider. District courts must "impose a sentence sufficient, but not greater than necessary," to reflect the factors set forth in section 3553(a). *Kimbrough*, 552 U.S. at 101. A downward variance is only warranted where the case presents atypical circumstances differentiating it from other cases involving similar offenses. *See Gall* v. United States, 552 U.S. at 47, 50.

### III.

As noted earlier, sentencing judges may impose sentences that vary from the guidelines range based on a policy disagreement with the guidelines. *See, e.g., Spears v. United States*, 555 U.S. 261, 263-67 (per curiam); *Kimbrough*, 552 U.S. 109-10; *United States v. Malone*, 809 F.3d 251, 258 (5th Cir. 1995) (citing *Kimbrough's* holding that "district courts have discretion to vary from the Sentencing Guidelines based solely upon policy disagreement"). There are indications that some courts are beginning to recognize that the Sentencing Guidelines' treatment of methamphetamine offenses is unreasonable.

*In United States v. Hayes*, Judge Mark Bennett of the Northern District of Iowa issued a lengthy opinion stating his disagreement with methamphetamine sentences guidelines. *See United States v. Hayes*, 948 F.Supp.2d 1009 (N.D. Iowa 2013). In *Hayes*, Judge Bennett described three reasons for his disagreement with the methamphetamine-sentencing guidelines. First, the Sentencing Commission failed to fulfill its institutional role of ensuring that the guidelines provide certainty and fairness while reflecting advanced understandings of human behavior; instead, the Commission followed Congress's lead in constructing methamphetamine sentences that were not based on empirical data. *Id.* at 1018-27. Second, Judge Bennett found that the methamphetamine guidelines are excessive, forcing the majority of offenders to face mandatory minimum sentences that were originally intended for drug enterprise leaders and managers. *Id.* at 1027-29. That situation is especially true here, where

Solis is in the highest base offense level based on only 45 kilograms of methamphetamine, where the same base offense requires 90 kilograms of heroin or 450 kilograms of cocaine. See USSG §2D1.1(c)(1). Third, Judge Bennett noted that the methamphetamine guidelines are not heartlands, since only 42.9% of sentences were within the guideline ranges. Id. at 1029-31. In light of his policy disagreements with the guidelines, Judge Bennett announced that he was implementing a standard one-third below-guideline reduction in his sentencing for methamphetamine offenses. Id. at 1031-33.

Evidence indicates that other courts are, with increasing regularity, finding reasons to sentence methamphetamine offenders below the guidelines. The Sentencing Commission's statistics show that, nationally, the occurrence of non-government sponsored below-range sentences in methamphetamine cases is increasing. U.S. Sentencing Comm'n, Quick Facts: Methamphetamine Trafficking Offenses (2013), available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Methamphetamine_2013.pdf; U.S. Sentencing Comm'n, Quick Facts: Methamphetamine Trafficking Offenses (2012), available at http://www.ussc.gov/sites/default/files/pdf/ research-and-publications/quick-facts/Quick_Facts_Methamphetamine.pdf.

In 2008, only 12.8% of methamphetamine offenders received such below-range sentences. U.S. Sentencing Comm'n, Quick Facts (2012). By 2013, that number had increased to 22.0% of cases, marking a 71.8% increase. See U.S. Sentencing Comm'n, Quick Facts (2013). The district courts of the Fifth Circuit have similarly increased their non-government-sponsored below-range sentences from 7.9% in 2008 to 14.7% in 2012 — an 86% increase. U.S. Sentencing Comm'n, Interactive Sourcebook of Federal Sentencing Statistics tbl. 45, available at http://isb.ussc.gov/content/ pentaho-cdf/RenderXCDF?solution=Sourcebook&path =&action=table_ xx.xcdf&template= mantle&table _num=Table45-8 (applying filters for the Fifth District in years 2008 and, separately, 2012)).

Thus, Solis asks the Court to consider granting a variance based on the sentencing guidelines ranges for methamphetamine offenses being over-inflated solely due to the type of drug involved.

IV.

Solis also asks that the Court consider granting a variance based on one of the section 3553(a) factors — "the nature and circumstances of the offense and the history and characteristics of the defendant." See 18 U.S.C. § 3553(a)(1). The evidence at trial, and in the PSR, shows that Solis voluntarily removed himself from any conspiracy to distribute methamphetamine, and engaged in significant efforts to self-rehabilitate. Both of these factors justify a downward variance.

First, at trial, there was evidence of telephone calls in which Solis refused to be a go-between a methamphetamine buyer and a supplier, including asking the buyer, "Why are you calling me? I don't do that shit anymore." Second, the evidence showed that Solis moved from the area to Mission, Texas, in June 2012. (PSR, ¶ 29.) In the past four years, while remaining at the same address, Solis worked washing cars at his uncle's car lot in Mission, Texas, at a tire shop, and building fences. (PSR, ¶¶ 35, 86.) Even after being contacted by the U.S. Marshal Service, Solis remained at the same residence in Mission. (PSR, ¶ 35.) There was no evidence that he sold any illegal drugs of any kind during these four years. Other than a state arrest on March 17, 2012, for allegedly engaging in organized criminal activity, which disposition is pending, Solis has had no other arrests. (PSR, ¶ 66.) In addition, Solis, in recognition of his drug problem, voluntarily checked into a thirty-day in-patient treatment program in Euless, Texas. (PSR, ¶ 82.)

Solis's efforts to withdraw from any conspiracy to distribute methamphetamine — to the extent of physically removing himself from the area justifies a downward departure, especially given that the sentence in this case is life. Compare Gall v. United States, 552 U.S. 38, 59-60 (2007) (Court of Appeals should have given due deference to the district court's reasoned and

reasonable decision that the section 3553(a) factors, on the whole, justified a downward variance based, in part, on the defendant's withdrawal from a drug conspiracy).

In addition, Solis's efforts at self-rehabilitation justify a downward variance because his efforts represent atypical circumstances differentiating his situation from other cases involving similar offenses. *See Gall*, 552 U.S. at 47, 50. For four years prior to his arrest on the underlying charges, Solis committed no crimes, was gainfully employed, helped support his family, and remained at the same residence, despite being contacted by law enforcement. He should be given some reduction in his life sentence in recognition of his effort to self-rehabilitate himself for a span of four years. *Compare United States v. Shanklin*, 570 Fed. Appx. 288 (4th Cir. 2014) (district court varied downwardly from the guidelines range by thirteen months for defendant convicted of possessing with intent to distribute oxycodone based, in part, on the defendant's self-rehabilitation).

Wherefore, Solis prays that the Court will consider the above arguments in support of a downward variance.

Respectfully Submitted,

/s/ Terri Moore

Terri Moore
SBIN: 14377780
Law Office of Terri Moore
300 Burnett Street, Ste. 160
Fort Worth, Texas 76102
(817) 877-4700
(817) 698-0000 (facsimile)
moore@terrimoorelaw.com

## CERTIFICATE OF CONFERENCE

On May 3, 2017, my paralegal, Jena Parker, spoke with Shawn Smith, the AUSA assigned to this matter, who stated that the government is opposed to the granting of this motion.

*Terri Moore*
Terri Moore
Attorney for the Defendant

## CERTIFICATE OF SERVICE

On May 3, 2017, I hereby certify that I have served AUSA Shawn Smith, counsel for the government, via hand-delivery.

*Terri Moore*
Terri Moore